## JOHN D. FACKLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102063.     Promulgated November 14, 1941.

*W. Dean Hopkins, Esq.,* for the petitioner.
*W. W. Kerr, Esq.,* for the respondent.

OPINION.

TURNER: The petitioner appears to have acquiesced in the respondent's determination in so far as it concerns the personal property acquired from the Sloan-Prospect Corporation and apparently used in and about the building until its sale along with the leasehold in 1938. No issue was raised in the petition with respect to it, nor was any contention made by petitioner at the hearing or on brief that the respondent's determination with respect thereto is erroneous. The

issue and the argument relate only to respondent's determination with respect to the lease.

As to the lease, the petitioner takes the position that during 1938 his business was the practice of law and that the lease (1) was not used by him in his business, and (2) was not subject to an allowance for depreciation, but was a capital asset as defined by section 117 (a) (1) of the Revenue Act of 1938 and only 50 percent of the gain realized from the sale thereof was taxable income. The respondent did not file a brief, but, as indicated by statements of his counsel at the hearing, takes the position that the use made by the petitioner of the lease was in a trade or business, and that the lease, being depreciable property under section 23 (1), was not a capital asset within the meaning of the act.

The Revenue Act of 1938 provides as follows:

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this title—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1);

*        *        *        *        *        *        *

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*        *        *        *        *        *        *

(1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * *

It is accordingly noted that with respect to "property used in a trade or business" Congress, through section 23 (1), has provided under the heading "Depreciation" for the deduction of "a reasonable allowance for the exhaustion, wear and tear" of such property "including a reasonable allowance for obsolescence." It is further noted that in defining capital assets Congress, in section 117 (a) (1), has excluded exactly the same property, namely, "property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1)."

In the instant case the petitioner was the owner of a lease on the Sloan property, the lease having been acquired in 1933 at a cost of $5,461.08. From the date of acquisition to September 30, 1938, when the lease was sold, petitioner rented space in the building located on the property to various tenants, managing and maintaining the building for the use of those tenants under his agreements with them, and during that part of the period falling in 1938 petitioner, in addition to rents, received other income for furnishing electric current to tenants. In short he was operating and using the property for the

production of taxable income. Although the Revenue Acts of 1913 and 1916 contained provisions similar to that set out above in section 23 (1) respecting an allowance for depreciation, and all acts since that of 1916 have contained a provision identical with that in section 23 (1), we have been unable to find any decision holding that where the owner of depreciable property devoted it to rental purposes and exclusively for the production of taxable income, he was not engaged in a trade or business. On the contrary, such decisions as bear on the question indicate otherwise. In *W. B. Brooks*, 12 B. T. A. 31; aff'd., 35 Fed. (2d) 178, the taxpayer purchased a dwelling house in 1896 and used it as his personal residence until 1910 or 1911, when its use for that purpose was abandoned. Thereafter it was rented and held for sale until in 1919, when it was sold. The question involved was whether the taxpayer had sustained a deductible loss on the sale, and, if so, the amount thereof. In holding that a deductible loss had been sustained, we said:

* * * After March 1, 1913, of course, depreciation must be taken into consideration in the instant case, since the petitioner was then required to make a return of his income and pay a tax thereon and was also entitled to deduct depreciation on the building in question, a depreciable asset which was being used in the production of income.

For other cases of the same import see *Walter L. Ball et al., Co-executors*, 8 B. T. A. 180; *Joseph F. Cullman, Jr.*, 16 B. T. A. 991; *Edward L. Parker*, 19 B. T. A. 171; *Edwin Vosburgh*, 23 B. T. A. 780; *Kay Kimbell*, 41 B. T. A. 940. In *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, it was held that a corporation owning and leasing taxicabs and collecting the rents therefrom was doing business within the meaning of the excise tax act of 1909, which imposed a tax on corporations with respect to the "carrying on or doing business" by such corporations. In *George S. Jephson*, 37 B. T. A. 1117, the taxpayer, who was a manufacturer of food products, purchased in 1925 a five-story residence for the purpose of renting it. From then until 1934 he attempted to rent it but without success and the house remained unoccupied. We there held with respect to the years 1932, 1933, and 1934 that there was a continuing devotion of the property to a business use and purpose and that the depreciation sustained thereon in those years represented depreciation sustained on property used in carrying on a business and deductible under the provision of the applicable acts identical with that in section 23 (1) set out above.

The rule deducible from the above decisions is that, where the owner of depreciable property devotes it to rental purposes and exclusively to the production of taxable income, the property is used by him in a trade or business and depreciation is allowable thereon. A lease is property and when its owner uses it for business purposes, including subletting to tenants, a deduction for exhaustion is allowable

with respect to it on account of such use. *Minneapolis Security Building Corporation*, 38 B. T. A. 1220, and cases there cited.

In support of his contention that the leasehold was not property used in a trade or business and of a character subject to the allowance for depreciation and not therefore a capital asset under section 117 (a) (1), the petitioner states that there is great likelihood of continued renewals of the lease; that in accordance with certain of his testimony and the real property law of Ohio his relation to the Sloan property was essentially that of a fee owner, and that there was nothing to amortize or exhaust because the property had no limit of duration. In *Weiss* v. *Wiener*, 279 U. S. 333, the Court pointed out that in Ohio leases for 99 years, renewable forever, are treated in many respects like conveyances of the fee, but stated that the taxing act had its own criteria, irrespective of local law, with respect to liability and exemption, whatever the lessees may be called. It is unnecessary for us to decide whether the petitioner in acquiring the leasehold became the fee owner. If we should decide that he was, his position here would not be improved. The property, including the building, was used by him in a trade or business and the building was property of a character subject to an allowance for depreciation, which would exclude it from classification as a capital asset under section 117 (a) (1). The record affords no basis for making an allocation of either the cost or the selling price between the land and the building, nor does it afford any basis for ascertaining the life of the building at the time of the acquisition of the leasehold in 1933 or what would be a proper rate of depreciation thereon. Under these circumstances we would be in no position to modify the amount of the deficiency as determined by respondent.

In view of the foregoing, it is our opinion that the use made by the petitioner of the leasehold in 1938 brings it within the meaning of property "used in the trade or business" as that phrase is employed in section 117 (a) (1) and 23 (l) of the Revenue Act of 1938 and that it is property of a character subject to the allowance for depreciation provided in the latter section. It accordingly follows that the leasehold was not a capital asset within the definition of section 117 (a) (1) and that taxation of the gain resulting from the sale thereof is not controlled by the capital gain provisions of the act.

The conclusions reached herein are consistent with our opinion at 39 B. T. A. 395, which involved an appeal of this petitioner for 1934 and 1935 as to the deductibility, as ordinary and necessary business expenses, of real estate taxes which were paid by him for 1931 and 1932 on the Sloan property and were past due at the time he acquired the lease in August 1933. We there held that the amount of such taxes, less certain recoveries with respect thereto, constituted consideration paid by the petitioner for the lease and was not deductible from in-

come in either the year in which assumed or in the year paid, but was proratably deductible over the life of the lease as part of the cost thereof.

*Decision will be entered for the respondent.*