George H. Graf v. Commissioner. Estate of Elizabeth M. Graf, George H. Graf and Lester A. Graf, Executors v. Commissioner.
George H. Graf v. Commissioner
Docket Nos. 6769, 6772.
United States Tax Court
1947 Tax Ct. Memo LEXIS 86; 6 T.C.M. (CCH) 1089; T.C.M. (RIA) 47270; September 30, 1947
*86 Glenn W. Woodin, Esq., 14-16 Lester Bldg., Dunkirk, N. Y., for the petitioner. J. Frost Walker, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent has determined the income tax deficiencies for 1941 of $476.36 against George H. Graf and $586.42 against the estate of Elizabeth M. Graf, his deceased wife. The proceedings were joined for trial. The question in issue is whether a loss resulting from sale of real estate was an ordinary loss deductible in full or a capital loss deductible only in part. The term, petitioners, as hereinafter used, refers to George H. Graf and his deceased wife, individually. Findings of Fact The petitioners were residents of Dunkirk, New York, in the taxable year 1941. They filed their income tax returns for that year with the collector of internal revenue for the 28th district of New York. During and for many years prior to 1941 the petitioners conducted a retail furniture business at Dunkirk. The business was operated as a partnership under the name of George H. Graf & Company. About 1907 the petitioners began to invest the profits from the furniture business in real estate. They also *87 purchased some securities. Over the period 1907 to 1939 they purchased a total of about 30 parcels of real estate, both improved and unimproved. The purchase prices of the improved properties varied from about $2,000 to over $80,000 each. The first parcel purchased by the petitioners was the store which they occupied in their furniture business. The purchase price was $63,643.31. They purchased another improved property in 1916 for $53,372.67; one for $19,297.38 and another for $25,523.03 in 1922; another for $82,497.06 in 1928; and another for $18,733.54 in 1931. Purchase prices of the unimproved properties varied from about $200 to $4,000. In April, 1940, the petitioners purchased a tract of land on the outskirts of Dunkirk known as "Lohman Subdivision." This tract was divided into about 65 unimproved lots. The petitioners put on an advertising campaign in 1940 and in that year and 1941 sold 10 of such lots. They also sold one improved property in 1940 at a small profit. The petitioners kept separate books for their real estate business. In 1941 they organized a corporation to which they transferred all of their real estate holdings, which were then valued at about $300,000. *88 While vacationing in Florida in 1925 the petitioners purchased two unimproved lots in Miami Shores, Miami, Florida, for $5,459.35. In 1933 they purchased a third lot in the same section for $2,002. They sold the three lots in 1941 for $1,970.94. They held the lots for sale at all times. They corresponded with several prospective buyers in Florida during 1937 and subsequent years. In letters written in 1938 the petitioner, George H. Graf, stated that the lots were for sale and that he would consider any reasonable offer for them. The petitioners were engaged in the real estate business in 1941. The three parcels of Florida real estate which the petitioners purchased in 1925 and 1933 were held by them primarily for sale to customers in the ordinary course of their business and were, therefore, not capital assets within the meaning of section 117(a)(1), Internal Revenue Code. The only issue presented here is whether the loss of $5,490.41 which the petitioners suffered on the sale of the three parcels of Florida real estate described above was an ordinary loss deductible in full or a capital loss for which the deduction is limited by statute. Section 117 (a) (1) of the Internal Revenue Code *89 , in effect in 1941, provides in part that: "* * * The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *." Opinion LEMIRE, Judge: We think that the evidence supports the petitioners' contention that they were engaged in the real estate business during the taxable year involved, and we have so found. From about 1919 they purchased heavily in both improved and unimproved properties. They reported net rentals in 1941 of over $13,000. If the petitioners had sold their rental properties, or any of them, in 1941, the gains or losses would not have constituted capital gains or losses. See Leland Hazard, 7 T.C. 372; John D. Fackler, 45 B.T.A. 708, affirmed, 133 Fed. (2d) 509; William H. Jamison, 8 T.C. 173; Solomon Wright, Jr., 9 T.C. 173 (Aug. 11, 1947). *90 There were no sales of real estate by the petitioners prior to 1940, but 10 separate parcels, including those here in dispute, were sold in 1940 and 1941. The petitioners' activities in the real estate market were sufficient, we think, to constitute a trade or business within the meaning of the statute. See Snell v. Commissioner, 97 Fed. (2d)891. There can be no doubt that the petitioners were in the real estate business after their purchase of the Lohman Subdivision in April, 1940, and we do not understand that the respondent seriously contends otherwise. He submits in his brief that: "The activity of the taxpayers with respect to the sale of the three Florida lots in question is insufficient to constitute the taxpayers 'dealers' within the general meaning of such term. The purchase and sale of the three Florida lots in question constituted a transaction in vacant Florida lots, unrelated to and not connected with the taxpayers' trade or business, such lots being acquired and held by them for investment purposes." We think that the distinction which the respondent makes, inferentially, between the Florida transactions in real estate and those in the State of New *91 York is unwarranted. If the petitioners were in the real estate business with respect to the New York transactions, and we think that the evidence establishes that they were, they were in that business with respect to the transactions in Florida. Some of the New York transactions, like those in Florida, involved unimproved lots which were not productive of income. Thus, it could not be said that the petitioners were in the business of renting but not buying and selling real estate. The purchase of the Florida properties for the purpose of selling them for a profit was a part of the real estate business regularly carried on by the petitioners. They were no more isolated transactions than were the purchase of the separate parcels in the State of New York. It was the sum total of these transactions that constituted the business. We think that the respondent was in error in treating the losses in dispute as capital losses, rather than as ordinary losses. Decisions will be entered under Rule 50.