James L. Vaughan v. Commissioner.
Vaughan v. Commissioner
Docket No. 13851.
United States Tax Court
1948 Tax Ct. Memo LEXIS 190; 7 T.C.M. (CCH) 288; T.C.M. (RIA) 48076; May 14, 1948
James L. Vaughan, pro se. Howard M. Kohn, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves income tax deficiencies of $561 for 1944 and $260 for 1945. The deficiencies for both years result from the respondent's determination that losses on real estate sales, which the petitioner deducted in full in his income tax returns as ordinary losses, were capital losses subject to the limitations provided for in section 117, Internal Revenue Code. Findings of Fact The petitioner is a resident of Cleveland, Ohio. He filed his returns for the taxable years involved with the collector of internal revenue for the *191 eighteenth district of Ohio, at Cleveland. For a number of years the petitioner has been engaged in the practice of law. He was admitted to the Ohio bar in 1906. At about that time he also began to buy and sell real estate. He purchased his first parcel of real estate in 1906. In 1916 he became a member of a partnership under the firm name of Lamb, Vaughan and Lamb, which engaged in the practice of law in Cleveland until its dissolution in 1939. The firm handled a great many real estate matters for its clients. During that period the petitioner purchased and sold numerous parcels of real, estate, some individually and some through syndicates with which he became associated. During the years 1906 to 1924, petitioner, either alone or with associates, purchased eight different properties, all but one of which were sold within one to three years. Some of these properties were unimproved tracts acquired for the purpose of development or resale. A tract of 23,000 acres located in Manatee County, Florida, was purchased in 1925 by a syndicate of which the petitioner was a member and to which he contributed $5,000. This property was later sold at a loss. In 1926 the petitioner joined in several *192 syndicate operations, one of which involved a tract of 150 acres in Boston Heights. In 1927 he purchased, individually, a 45-acre tract in Boston Heights, which he still owns, and also participated in a syndicate venture involving the purchase of 212 additional acres in the same area. This syndicate venture was also closed out at a loss. Also, in 1927, the petitioner purchased an apartment house in Cleveland which he later traded for other property. Altogether, there were 19 separate properties acquired over the period 1925 to 1928, either by the petitioner alone or by syndicates of which he was a member. All but four of those tracts were disposed of before 1934. One of them was sold in 1944 at a loss of $7,225 and one in 1945 at a loss of $2,290. Those are the losses here in dispute. The petitioner still owns the other two parcels. In 1937 a syndicate, of which the petitioner was a member, purchased and sold the Advance Building in Cleveland; and some time after 1936 the petitioner, individually, purchased and sold 123 lots on Harvard Avenue, Cleveland. After dissolution of the firm of Lamb, Vaughan and Lamb, the petitioner formed a partnership for the practice of law with Gerald *193 A. Doyle. During 1942, and until September 1945, petitioner was employed by the Aluminum Company of America on a full-time eight-hour basis, but kept up his law practice with Doyle on a part-time basis. Since leaving the Aluminum Company he has devoted full time to his law practice and to real estate matters. In his income tax returns for 1944 and 1945 the petitioner deducted as ordinary losses the full amount of his losses on the two sales of real estate made in those years. In the 1944 sale the property was listed as having a cost of $7,250 (the petitioner had a one-fourth interest) and a sale price of $25. The 1945 sale was for $10 and the cost price $2,300. The respondent determined in his deficiency notice herein that these losses were not ordinary losses but longterm capital losses, the deduction of which is limited in each year to $1,000, under section 117 (d) (2), Internal Revenue Code. Opinion LEMIRE, Judge: Our only question here is whether the two parcels of real estate which the petitioner sold during the taxable years, with the resultant losses of $7,225 in 1944 and $2,290 in 1945, which the respondent does not question as to the amounts involved, *194 were "capital assets" within the meaning of section 117 (a) (1), Internal Revenue Code. If so, the petitioner's deductions are limited to $1,000, under section 117 (d) (2), as the respondent has determined. The pertinent provisions of the statute are as follows: "SEC. 117. CAPITAL GAINS AND LOSSES. "(a) Definitions. - As used in this chapter - "(1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), * * * or real property used in the trade or business of the taxpayer; * * *
"(d) Limitation on Capital Losses. - * * * "(2) Other Taxpayers. - In the case of a taxpayer, other than a corporation, losses from sales or exchanges *195 of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of [or] $1,000, whichever is smaller. * * *" In Phipps v. Commissioner, 54 Fed. (2d) 469 (C.C.A., 2d Cir.), the court said: "Persons with large incomes of course invest their surplus funds in something, and if, to diversify their holdings, they buy land, with the expectation of selling it when a good price is offered, such an expectation cannot, in our opinion, convert some sales of land that had been held for seven or eight years into a trade or business in real estate. There should be a greater continuity and larger absorption of time in such transactions to make the taxpayers more than investors. A fair reading of the record makes it clear that nothing was done during the years in question but to hold land for sale which had been previously purchased, and to accept such offers from purchasers as were presented by brokers and seemed satisfactory. There was during the years in question no activity amounting to a trade or business within the meaning of the statute, and whether there was such a trade or business depended on the situation *196 of the taxpayers at the time of the sale. They had not continuously engaged in the development and sale, or the purchase and sale of lands. * * *" On the evidence before us here we cannot find that the petitioner was engaged in the real estate business during the taxable years 1944 and 1945. While his real estate activities in the earlier years prior to or during 1936 and 1937 may have been sufficient to constitute such a trade or business there is ample evidence that the petitioner voluntarily abandoned that business long before 1944. He was under full employment with the Aluminum Company of America from some time in 1942 until 1945 and during the same period was devoting part time to his law practice. The facts here are different from those in Walter G. Morley, 8 T.C. 904, where we found that the taxpayer had never abandoned or intended to abandon the real estate business which he had previously established and had conducted for a number of years. The real estate sales in 1944 and 1945 were clearly isolated transactions. They were described by the petitioner as "salvage sales" and this is substantiated by the nominal prices for which the properties were sold. *197 The petitioner relies upon Fackler v. Commissioner, 133 Fed. (2d) 509. In that case the taxpayer sold a 99-year leasehold on a building which he had operated for rofit. The court held, affirming 45 B.T.A. 708, that the leasehold was not a capital asset and that the gain on its sale was an ordinary gain and not a capital gain. That case involves facts so different from those in the instant case that it affords little, if any, support for the petitioner's contentions. On the evidence of record we sustain the respondent's determination hat the losses on the sales in question were losses on the sale of capital assets. Decision will be entered for the respondent.