Elsinore Cattle Company v. Commissioner.
Elsinore Cattle Co. v. Commissioner
Docket Nos. 21022, 21023.
United States Tax Court
1950 Tax Ct. Memo LEXIS 272; 9 T.C.M. (CCH) 124; T.C.M. (RIA) 50041; February 21, 1950
*272 Held: 1. That a certain transaction in the year 1943 constituted a closed sale. 2. The loss incurred on such sale in 1943 was an ordinary loss and not a capital loss. W. M. Aikman, Esq., Rep., Milam Bldg., San Antonio, Tex., and Ben S. Wendelken, Esq., for the petitioner. F. S. Gettle, Esq., and Joseph P. Crowe, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies and a penalty as follows: Income Tax
Excess-Profits
25%
Year
Deficiency
Tax Deficiency
Penalty
1943
$20,952.34
$ 5,027.57
$1,256.89
1944
5,250.52
1945
17,257.31
The deficiencies for 1943 are predicated on the respondent's holding that a certain transaction did not constitute a sale of property in 1943 and in the alternative, *273 that if it were a sale, the consequent loss was a capital loss and not an ordinary loss. The penalty for that year was asserted for late filing of an excess profits tax return. For the year 1944 respondent determined an overassessment in income taxes and a deficiency in excess profits tax predicated on the 1943 return and his disallowance of a carry-over loss. For the year 1945 he determined an overassessment in income taxes and a deficiency in excess profits tax also predicated on the 1943 return and his holding that the petitioner had no unused excess profits credit adjustment for the year 1945. The evidence consists of a stipulation of facts, exhibits and oral testimony. Findings of Fact The petitioner was incorporated January 1, 1900 under the laws of the state of Texas. During the years 1943, 1944 and 1945 the petitioner was actively engaged in its business operations. The charter of the petitioner stated as follows: "This Corporation is formed for the purpose of raising, buying and selling livestock." The petitioner kept its books and filed its Federal income and excess profits tax returns on the accrual basis. The petitioner filed its Federal income and excess profits *274 tax returns for the years 1943, 1944 and 1945 with the collector of internal revenue at Austin, Texas. William Lennox of Colorado Springs, Colorado, a then stockholder, owning 50 per cent of the capital stock of the Elsinore Cattle Company, purchased 9,113.82 acres of land in Moro and San Miguel Counties in New Mexico for $67,621.16 on or about July 1, 1920. William Lennox transferred a onehalf interest in the land to Hester E. Giddings, who was the owner of 50 per cent of the capital stock of Elsinore Cattle Company, and on or about July 20, 1920, William Lennox and Hester E. Giddings transferred the above described land to the Elsinore Cattle Company. Each received a check for $33,810.58, or a total of $67,621.16 from the Elsinore Cattle Company. The Elsinore Cattle Company exchanged the 9,113.82 acres of land in New Mexico for 1,850 acres of land in El Paso County, Colorado, and assumed a lien of $18,813.74 against the Colorado land, on or about June 25, 1927. The lien against the land was subsequently paid by the Elsinore Cattle Company. A right of way for a pipe line was sold in the latter part of 1947 for $168.50, which was credited to the cost of the land. The Elsinore Cattle *275 Company purchased 650 shares of stock in the Fountain Mutual Irrigation Co. in the years 1937 and 1940 for the purpose of obtaining or retaining water rights to the Colorado farm, at a cost of $3,683.71. There was $3,600 of the purchase price of the Colorado land allocated to buildings and improvements on the Colorado land as of the date of acquisition. Additional improvements were subsequently made on the property in the sum of $5,552.49. Deductions have been made for depreciation in the amount of $3,815.54 and $450 for a house that was burned, leaving a net cost of the improvements and buildings on June 15, 1943 in the amount of $4,886.95. The exchange in 1927 of 9,113.82 acres of land in New Mexico for the 1,850 acres of land in Colorado on or about June 25, 1927 was treated by the petitioner as an even exchange of like property. The petitioner's share of the crops from the 1,850 acres of land in Colorado for the period of years from June 27, 1927 to June 15, 1943, was as follows: 6-27-27 to 12-31-27 (pt. payment)
$ 100.00
Year 1928
996.79
Year 1929
1,621.18
Year 1930
775.10
Year 1931
638.58
Year 1932
369.00
Year 1933
615.82
Year 1934
687.19
Year 1935
3,106.21
Year 1936
1,306.09
Year 1937
3,924.27
Year 1938
$3,124.36
Year 1939
2,966.46
Year 1940
2,335.58
Year 1941
1,901.19
Year 1942
2,022.57
1-1-43 to 6-15-43
1,760.44
*276 The crops from the Colorado land for the years 1927 to June 15, 1943, were divided between the tenants and the petitioner upon a basis currently agreed upon. At the time of the agreement of June 15, 1943, Gayle M. Foster and C. A. Foster were the tenants. On June 15, 1943, the petitioner, Gayle M. Foster and C. A. Foster entered into an agreement with respect to the 1,850 acres of Colorado land. The agreement read, in part, as follows: "AGREEMENT FOR SALE AND PURCHASE OF PROPERTY "ARTICLES OF AGREEMENT, Made this 15th day of June, A. D., 1943, between THE ELSINORE CATTLE COMPANY a Corporation, of the first part, and GAYLE M. FOSTER and C. A. FOSTER as joint tenants and not as tenants in common of the second part. "WITNESSETH, That if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on their part to be made and performed, the said part of the first part hereby covenants and agrees to convey to the said party of the second part, in fee simple, by good and sufficient Warranty Deed to the following lots and parcels or pieces of ground, viz: "(Here follows description of the land) "Said premises to be free and clear *277 of all liens, incombrances and taxes except taxes for 1943 and thereafter an impositions and assessments due in 1943 and thereafter. "An the said party of the second part hereby covenants and agrees to pay to the said part of the first part, the sum of Thirty-five Thousand Dollars ($35,000.00) in the manner following: Three Thousand Five Hundred Dollars ($3,500.00) upon the execution of this instrument, receipt of which is hereby acknowledged, the further sum of $2,500.00 on or before June 1, 1944 $2,500.00 on or before June 1, 1945 $2,500.00 on or before June 1, 1946 $3,500.00 on or before June 1, 1947 $3,500.00 on or before June 1, 1948 $3,500.00 on or before June 1, 1949 $3,500.00 on or before June 1, 1950 $3,500.00 on or before June 1, 1951 $3,500.00 on or before June 1, 1952 $3,000.00 on or before June 1, 1953 with interest upon unpaid balances of purchase price at the rate of five per cent (5%) per annum from this date until paid, interest payable annually. "The parties of the second part further, jointly and severally, agree to pay all taxes, water assessments or impositions which may be legally levied or imposed upon said property or upon said water *278 rights or by reason of said shares of the Fountain Mutual Irrigation Company and to pay the same promptly when due, and to properly farm said ranch in an approved and satisfactory manner, keeping all fences and improvements thereupon in a good and sufficient state of repair. "And in case of failure of the said party of the second part to made either of the payments or perform any of the covenants on their part, this contract shall be forfeited and determined at the election of the said party of the first part, upon his giving to the said party of the second part 30 days' notice of his intention so to do; and the said party of the second part shall forfeit all payments made by them on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and liquidation of all damages by it sustained and it shall have the right to re-enter and take possession of said premises. "IT IS MUTUALLY AGREED, That the time of payment shall be an essential part of this contract, and if at any time the same shall be forfeited and determined in the manner above provided, the said party of the second part do hereby covenant and agree to surrender and deliver *279 up said above described premises peaceable, to the said party of the first part, immediately upon the termination of this contract as aforesaid, and if they shall remain in possession of said premises after such termination they shall be deemed guilty of a forcible detainer and provisions above stated and to eviction and removal, forcible or otherwise, with or without process of law. "AND IT IS FURTHER MUTUALLY AGREED and understood, that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties. "This Agreement supersedes [supersede] a lease rental agreement now existing between the parties herein and all crop rents reserved to the party of the first part are hereby released. "IN WITNESS WHEREOF, The parties to these presents have hereunto set their hands and seal the day and year first above written." The petitioner in its 1943 Federal income tax return claimed as an ordinary loss the amount of $56,059.04 on the 1,850 acres of Colorado property under the agreement entered into on June 15, 1943. The loss claimed by the petitioner is determined as follows: Land acquired September 1927
$82,488.38
Improvements - less depreciation
4,886.95
Irrigation Company stock
3,683.71
$91,059.04
Sold for
35,000.00
Alleged loss on ranch
$56,059.04
Less: Gain on sale of Dodge auto
146.25
Net loss claimed in return
$55,912.79
*280 The basis for any gain or loss on the disposition of the 1,850 acres of Colorado property is agreed by the respective parties to be as follows: Land acquired September 1927
$82,666.40
Improvements - less depreciation
4,886.95
Irrigation Company stock
3,683.71
Total
$91,237.06 Capital gain of $146.25 was realized in 1943, on sale of automobile. Payments by Gayle M. and C. A. Foster pursuant to the agreement of June 15, 1943, were as follows: 6/18/43 - Initial payment on principal
$ 3,500.00
3/29/45 - Payment due 6-1-44 on Colorado sales contract
2,500.00
3/29/45 - Interest at 5% to 6-1-44
$1,509.37
7/8/46 - Payment on $2,500.00 principal installment due 6-1-45
50.00
7/8/46 - Interest to 6-1-46
216.35
4/2/47 - Balance payment due 6-1-45
2,450.00
4/2/47 - Payment due 6-1-46
2,500.00
12/26/47 - Payment on principal due 6-1-47
1,000.00
12/26/47 - Interest to 6-1-47
1,406.25
12/26/47 - Interest for year beginning 6-1-47
18.75
4/2/48 - Payment balance contract
23,000.00
4/2/48 - Interest through March 24, 1948
945.41
Total Principal Received
$35,000.00
Net taxable income as adjusted from all sources of *281 the petitioner for the years 1927 to 1943, was as follows: 1927
$ 90,808.86
1928
9,857.40
1929
2,841.95
1930
8,044.87
1931
(59,499.11) *
1932
(32,232.08) *
1933
( 3,743.30) *
1934
(25,883.83) *
1935
15,849.25
1936
13,195.10
1937
36,858.89
1938
51,283.47
1939
56,437.43
1940
89,187.05
1941
87,613.46
1942
111,070.21
1943
24,096.27 **
The petitioner did not execute an excess profits tax return (Form 1121) for the year 1943 until November 7, 1945. The due date of the return was March 15, 1944. The respondent asserted the 25 per cent delinquency penalty in the notice of deficiency for failure of petitioner to file an excess profits tax return within the time prescribed by section 291 of the Internal Revenue Code. The petitioner's invested capital for the year 1943, computed under the invested capital method, is $801,878.02, as shown in the petitioner's excess profits tax return filed for the year 1943. After the execution of the "Agreement of Sale and Purchase of Property", petitioner received no rents from the property, paid no taxes or expenses, *282 made no use of and obtained no benefits from the 1,850 acres. After such date petitioner exercised no dominion or control over the property. The property was acquired by petitioner for the purpose of feeding cattle before marketing. Experience proved the property unsatisfactory for this purpose because of lack of growing feed and water. At all times after 1930 petitioner held the property for sale but because of market conditions, was unable to get a reasonable offer therefor. Petitioner owned approximately 190,000 acres of ranch land in Texas where it carried on its principal activities. The transaction by which petitioner disposed of the 1,850 acres was a closed sale on which loss or gain could arise in the year 1943. The property in question was real property used by petitioner in its trade or business of raising, buying and selling livestock. Opinion VAN FOSSAN, Judge: Respondent advances two principal contentions: (1) that the transaction in 1943 was not a closed sale, giving rise to a loss deduction in that year, and (2) if the loss was incurred in 1943 it was not incurred in connection with "real property used in the trade or business of the taxpayer." (Section 117 *283 (a) (1)). The written agreement and all circumambient facts support petitioner's position that the loss was incurred in 1943. The "Agreement of Sale and Purchase of Property" in all of its terms reflects a closed sale on the date of the agreement (June 15, 1943); the amount of and right to the purchase price were fixed and unqualified; the obligation to convey title on payment was absolute and enforceable; complete dominion and control over the property passed to the purchaser on the stated date; thereafter all the benefits and burdens of ownership were enjoyed or assumed by the purchaser; after the basic date equitable title resided in the purchaser, leaving the vendor only the bare legal title which it agreed to convey on final payment. Petitioner vendor received no rents or other avails of the property excepting the deferred payments of purchase price. We find no countervailing evidence. The transaction was a closed sale of land on June 15, 1943. Evergreen Cemetery Association v. Burnet, 45 Fed. (2d) 667; Commissioner v. Union Pacific Railroad Co., 86 Fed. (2d) 637. As to the second contention, i.e., that the loss was not incurred in connection with *284 "real property used in the trade or business of the taxpayer", the evidence is equally convincing in support of the petitioner. The land in question was acquired to use in the sole business of petitioner "raising, buying and selling livestock", and was so used. It was not acquired as collateral investment nor for any other purpose than that stated above. When, because of lack of growing feed and water, it was found to be unsuitable and unprofitable for the feeding of cattle, it was thereupon and thereafter held for sale or other disposition and it was sold as soon as a reasonable offer was obtained. The fact that the land was rented during this period is not damaging to petitioner's contention. The rents received merely tend to minimize petitioner's loss. Having once been used in petitioner's trade or business and thereafter rented while it was being held for disposition, it did not lose its standing as business property used in the trade or business of the taxpayer. Kittredge v. Commissioner, 88 Fed (2d) 632; Yellow Cab Co. of Pittsburgh v. Driscoll, 24 Fed. Supp. 993; George S. Jephson, 37 B.T.A. 1117, and Solomon Wright, 9 T.C. 173. *285 Moreover, there is good authority under which it might be held that, absent any other appropriation to business use, the mere renting gave it a business status. John D. Fackler, 45 B.T.A. 708, affirming 133 Fed. (2d) 509; Leland Hazard, 7 T.C. 372. The loss having occurred in 1943 and the real property, on the sale of which the loss was incurred, having been used by taxpayer in its trade or business, it follows that the loss was an ordinary loss and not a capital loss. The petitioner is sustained. It follows that the deficiencies, in so far as they arose from the loss in 1943, and the penalty are disapproved. Decision will be entered under Rule 50. Footnotes
*. Losses. ↩
**. (Without adjustments shown in deficiency notice).↩