Harry W. Goodman and Lucille Goodman v. Commissioner.
Goodman v. Commissioner
Docket No. 41330.
United States Tax Court
T.C. Memo 1954-43; 1954 Tax Ct. Memo LEXIS 205; 13 T.C.M. (CCH) 474; T.C.M. (RIA) 54149; May 17, 1954, Filed *205 Where petitioner and four associates in a joint venture purchased 18 cottages for resale, advertised them for sale, and erected a "For Sale" sign on the premises, held, the properties were held for sale to customers in the ordinary course of a trade or business, notwithstanding the incidental renting of some of the cottages until acceptable purchase prices could be obtained. Petitioner's share of the profits from sale of the cottages is taxable as ordinary income. Vincent B. Lewin, Esq., for the petitioners. Nathan M. Silverstein, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $1,589 in the income tax of petitioners for the calendar year 1948. The single issue for *206 decision is whether petitioner Harry W. Goodman's share of the gains of a joint venture from the sale of realty received in the taxable year is entitled to capital gains treatment under section 117 of the Internal Revenue Code, or whether it is taxable as ordinary income. Other adjustments in the deficiency notice are not contested and will be given effect under the Rule 50 computation. The stipulated facts are incorporated herein by this reference. Findings of Fact Petitioners, who are husband and wife, filed a joint return for the calendar year 1948 with the collector for the first district of New York. Harry W. Goodman will hereinafter be referred to as petitioner. On March 19, 1947, petitioner entered into a joint agreement which provided for the acquisition and resale of an entire community on Lake Peekskill, New York, consisting of 18 lots on which furnished cottages had been built. The other members of the joint venture and their primary occupations were as follows: Morris K. Strauss, certified public accountant; Samuel Harrison, accountant; Samuel Slutzky, attorney; and Samuel Gottfried, office manager, wire and cable company. Petitioner's chief *207 occupation was as general sales manager of a wire and cable company. The joint venture kept its books and records on a fiscal year basis ending April 30. It filed returns on Form #1065 for the fiscal years 1948, 1949 and 1950. The aforementioned real estate was purchased by the joint venture in petitioner's name by bill of sale dated March 20, 1947, for $105,000. At the time of acquisition it was intended that the cottages be sold as promptly as possible, the venture concluded, and the proceeds distributed to the joint venturers. In May, 1947, the venturers advertised the cottages for sale in the New York Times and the New York Post, listing the office phone of one of the venturers as the number to be called by interested parties. A sign reading "Houses for Sale, Lake Peekskill" was erected on the property during the year in question. The check issued in payment of the sign was dated December 19, 1947. The 18 cottages were sold as follows: Parcel
Allocated
Sales
Date Sold
No.
Cost
Price
(Fiscal 1948)
May 10, 1947
5
$4,500
$ 8,500
May 29, 1947
18
7,500
13,000
June 3, 1947
11
7,000
12,500
April 29, 1948
17
6,000
11,500
(Fiscal 1949)
June 14, 1948
16
6,000
11,500
July 7, 1948
2
4,500
7,000
July 7, 1948
3
4,500
7,000
July 7, 1948
4
4,500
7,000
July 7, 1948
12
8,500
16,500
July 12, 1948
9
4,000
7,650
Oct. 14, 1948
1
6,000
12,000
Mar. 10, 1949
15
6,000
8,750
(Fiscal 1950)
June 6, 1949
10
7,000
9,250
Oct. 24, 1949
6
4,000
5,500
Oct. 24, 1949
8
4,000
6,500
Oct. 24, 1949
13
6,000
7,000
Oct. 24, 1949
14
7,500
9,000
(Fiscal 1951)
Dec. 15, 1950 [1]
7
4,000
5,000
*208 During the fiscal years 1948 and 1949, those properties which had not been sold were rented for the summer season, the venture receiving $7,970 and $3,312.50, respectively, in rentals. No rental income was received during fiscal 1950. Deductions in the respective amounts of $18,511.89 and $6,991.70 were taken by the venture in its return for fiscal 1948 and 1949. The venturers built a dock, setting aside a piece of property to be used only by the residents for swimming purposes. The tennis court and handball court were also improved. Petitioner was never involved in any other real estate transactions with the exception of the holding of one parcel of rental realty many years before the year in question. The cottages in question were held primarily for sale to customers in the ordinary course of petitioner's trade or business. Opinion ARUNDELL, Judge: During the fiscal year ended April 30, 1948, the joint venture, of which petitioner was a *209 member, sold four cottages, all at substantial gains. The partnership return for fiscal 1948 treated the profits from the sales of the cottages as capital gains and petitioner, in carrying his share of the profits into his individual return, treated them as capital gains. As three of the cottages were sold within six months of the date of their acquisition, the petitioner agrees that the full profit on these sales was taxable. Respondent based his determination of the deficiency on the contention that the cottages were held by petitioner and his associates in the venture primarily for sale to customers in the ordinary course of their trade or business. If the cottages were in fact so held, capital gains treatment under either section 117(a)[2] or 117(j)[3] would be specifically barred and the profits would be taxable as ordinary income, since both sections expressly exclude real property so held. The question is essentially one of fact. Rubino v. Commissioner, 186 Fed. (2d) 304; King v. Commissioner, 189 Fed. (2d) 122. *210 Petitioner's primary contention on brief is that the cottages in question were investment property held primarily for rental purposes. We think this theory is without merit. It is admitted that the initial intention of petitioner and his associates was to sell all of the cottages as quickly as possible. We think the record makes it clear that that intention was never changed and that the cottages were in fact sold as quickly as favorable prices could be obtained. Four cottages were sold in the first year after acquisition, eight in the second year, and five [4] in the third year. Each and every sale was made at a substantial profit. The incidental renting of the unsold houses during the first two years is not inconsistent with the primary intention to sell. Petitioner himself testified that holding any of the property for as much as three years was against his wishes and that the venturers had no choice but to rent when ready purchasers could not be found. Furthermore, the rental receipts fell far short of covering the deductions in the partnership returns attributed to the rented cottages. Considering the entire record, we are convinced that the cottages were at all times held primarily *211 for sale. We are also convinced that the cottages were so held in the ordinary course of petitioner's trade or business. The five joint venturers entered into association with the idea of purchasing and reselling at a profit 18 cottages. The fact that all of them were engaged in other primary occupations does not preclude a holding that they were also engaged in a second business. Fackler v. Commissioner, 133 Fed. (2d) 509, affirming 45 B.T.A. 708; John E. Good, 16 T.C. 906. Here the venturers actively advertised the property both in the newspapers and by the erection of a "For Sale" sign on the premises. It appears, further, that the advertisements instructed interested parties to contact one of the venturers at his office. We think these factors are inconsistent with the role of a passive investor and indicate the carrying on of a trade or business in the course of which the property in question was held primarily for sale. It follows that the petitioner's share of the profits from the sales of the cottages is taxable to him as ordinary income and *212 respondent correctly denied capital gains treatment. Decision will be entered under Rule 50. Footnotes
1. Although the stipulation shows this date, the testimony was to the effect that all of the cottages had been sold by the end of fiscal 1950. The inconsistency is not of sufficient importance to affect our decision in any event.↩
2. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; (B) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1) * * *. ↩
3. SEC. 117(j). Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of Property Used in the Trade or Business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.↩
4. The number sold in the third year is either five or six. See Footnote 1, supra.↩