Charles A. Foehl, Jr., and Mary Mason Foehl v. Commissioner.
Foehl v. Commissioner
Docket No. 82022.
United States Tax Court
T.C. Memo 1961-93; 1961 Tax Ct. Memo LEXIS 248; 20 T.C.M. (CCH) 418; T.C.M. (RIA) 61093; March 31, 1961
James M. Keith, Esq., 100 N. St., Pittsfield, Mass., for the petitioners. Douglas D. Robertson, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in the petitioners' income tax for the year 1954 in the amount of $1,412.61. The question for decision is whether petitioners are entitled to a deduction of $1,891.80 as a loss incurred in a trade or business or a transaction entered into for profit. Findings of Fact The petitioners are husband and wife who now reside in Williamstown, Massachusetts. They filed a joint income tax return and an amended joint income tax return for the year 1954 with the district director of internal revenue for the district of Massachusetts. In October 1948 petitioners purchased a 2-acre plot of land in Llewellyn *249 Park, West Orange, New Jersey. This land had formerly been the site of a residence which had been torn down prior to petitioners' purchase of the property. The property had been landscaped and was planted with a number of trees. It was unimproved except for a swimming pool and two small 1-room bathhouses. The purchase price of the property was $12,958.55. Petitioners' purpose in buying the property was to build a personal residence thereon. Petitioners hired an architect who examined the site and drew up plans for a house. After the plans were drawn, petitioners decided that the cost of building a residence of the size they wanted was more than they were willing to spend at that time. In 1950 petitioner, Charles A. Foehl, Jr., hereinafter referred to as petitioner, accepted an indefinite appointment as treasurer of Williams College, Williamstown, Massachusetts, and he and his family moved to Williamstown in October 1950. Prior to assuming his position as treasurer of Williams College, petitioner had been actively engaged in the practice of law in Newark, New Jersey. When petitioner accepted the appointment as treasurer of Williams College and moved to Williamstown, he planned to *250 remain at Williamstown in that position for the remainder of his life or until such time as he might retire. Upon acceptance of the position as treasurer of Williams College, petitioner sold the home in which he and his family were then residing in South Orange, New Jersey. Shortly before moving to Williamstown, Massachusetts in 1950, petitioners decided to dispose of the Llewellyn Park property as expeditiously as possible. Around the first of October 1950 petitioners placed the property in the hands of a realtor, listing it for rent or for sale. Petitioner was primarily anxious to dispose of the property but in the interim wanted to obtain what income he could from it. In November 1950 the West Orange, New Jersey area was subjected to a severe storm and most of the property in Llewellyn Park, including petitioners' property, was damaged. Petitioners had an appraisal made of the property and on the basis of such appraisal claimed in their 1950 income tax return a casualty loss of $5,000. As a result of an audit by an internal revenue agent this casualty loss was reduced to $4,000 and petitioners agreed to the reduction. For approximately 2 to 3 months in the summer of 1951 petitioners' *251 property was rented to the operators of a summer camp. The entire property was rented, but the primary use made of the property was of the swimming pool and bathhouses. The total rent paid for the property for the summer of 1951 was $150. Other than for this period in the summer of 1951, the Llewellyn Park property was never rented. In 1952 petitioner unsuccessfully negotiated with the operators of the summer camp who had rented the property in 1951 and also unsuccessfully negotiated with an association known as the Llewellyn Park Association as to the possibility of renting the Llewellyn Park property. The Llewellyn Park property was sold by petitioners in January 1954 for $7,066.75. To petitioner's knowledge no offer of sale was received during the years 1950 to 1954 except the one which resulted in the final sale. Petitioners paid the real estate taxes on the Llewellyn Park property for all of the years between the time of its purchase and sale. Such taxes were between $500 and $600 a year. In the original income tax return filed by petitioners for the year 1954 they claimed a capital loss in the amount of $5,891.80 on the sale of the Llewellyn Park property, such amount being *252 the difference between the cost of the property to petitioners of $12,958.55 and the selling price thereof of $7,066.75. Petitioners, in their amended return for the year 1954 filed on June 17, 1955, claimed a capital loss on this property in the amount of $1,891.80 which amount was the difference between an adjusted basis of $8,958.55 (arrived at by reducing the original cost by the $4,000 casualty loss which had been allowed in computing their 1950 income tax) and the selling price of $7,066.75. Respondent, in the notice of deficiency, disallowed the loss claimed in the original income tax return for 1954 in the amount of $5,891.80 on the ground that it did not constitute an allowable deduction within the scope of section 165 of the Internal Revenue Code of 54. Opinion Petitioners contend that although the Llewellyn Park property was originally acquired as residential property, it was converted to business property in October 1950 when it was offered for rent or sale. Petitioners argue that at that time they had definitely abandoned the idea of building a personal residence on the property because of their decision to permanently move to Williamstown, Massachusetts. *253 Petitioners take the position that the property either became property used in a trade or business and thus the loss one arising from a trade or business, or that the property had been appropriated to income-producing purposes and therefore the loss was one incurred in a transaction entered into for profit though not connected with a trade or business. They contend that the loss should be allowed as an ordinary loss and have abandoned their contention for a loss from the sale of a capital asset as claimed in their income tax return. It is petitioner's position that since an appraisal was made of the property in November 1950 after it had been damaged by a severe storm, the $5,000 loss arrived at must have been on the basis of a remaining value of the property of $7,958.55, the difference between the purchase price and the $5,000, and that the reduction of the loss ultimately allowed for 1950 to $4,000 must have resulted in a determination of a value of the property after the date of the storm of $8,958.55. Respondent contends that petitioner's activities in connection with the property did not constitute a trade or business and that the rental for a period of between 2 and 3 months *254 in the summer of 1951 for the amount of $150 was not sufficient to constitute a transaction converting the property to income-producing property. Respondent further contends that there is insufficient evidence to show the value of the property in October 1950 when petitioners contend it became business property and that there is no evidence in the record tending to show the value of the property in the summer of 1951 when the conversion, if any, to income-producing property occurred. It has long been held that the mere listing of property which had been used for personal purposes with a broker for sale or rent does not constitute a transaction appropriating the property to income-producing purposes. Morgan v. Commissioner, 76 F. 2d 390 (C.A. 5, 1935), affirming a Memorandum Opinion of this Court, certiorari denied 296 U.S. 601; Rumsey v. Commissioner, 82 F. 2d 158 (C.A. 2, 1936), affirming a Memorandum Opinion of this Court, certiorari denied 299 U.S. 552. Even an exclusive listing does not satisfy this requirement. Allen Grammer, 12 T.C. 34 (1949). However, petitioners argue that these cases are inapplicable here *255 since the property was actually rented in the summer of 1951 and such rental was either sufficient to convert the property into property used in a trade or business or to constitute a transaction appropriating the property to income-producing purposes. Petitioners rely on Leland Hazard, 7 T.C. 372 (1946); Mae F. Meurer, 20 T.C. 614 (1953), affd. 221 F. 2d 223 (C.A. 2, 1955); Fackler v. Commissioner, 133 F. 2d 509 (C.A. 6, 1943), affirming 45 B.T.A. 708; and Gilford v. Commissioner, 201 F. 2d 735 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court. Each of these cases involves a rental over an extended period which was held to be sufficient to constitute a trade or business irrespective of the fact that the taxpayer was engaged in another trade or business. The facts here show a rental received of only $150 for a period of 2 to 3 months in the summer months of 1951 and no rental thereafter up until the time the property was sold in January 1954. This limited rental of the property is insufficient to constitute a trade or business. Cf. E. R. Fenimore Johnson, 19 T.C. 93, 98 (1952). *256 The property was originally purchased by petitioners for personal use. The rental income received from the property for a period of 2 to 3 months in the summer of 1951 is too trivial to show a real intention on the part of petitioners to convert the property to income-producing property. Cf. Carter-Colton Cigar Co., 9 T.C. 219 (1947), and E. R. Fenimore Johnson, supra. Even if we were to agree with petitioner that the property had been converted to property used in a trade or business or income-producing property, the evidence is insufficient to show that petitioner sustained any deductible loss from the sale of the property. The evidence does not support petitioner's argument that the value of the property in October 1950 was the amount of its purchase price less $4,000. Petitioner testified that he had an appraisal of the property made in November 1950 and as a result of such appraisal claimed a casualty loss of $5,000. There is no evidence of the appraised value of the property before or after the November 1950 storm. Petitioner's assumption that the appraised value before the storm was the purchase price of the property is totally without basis in *257 the record. If petitioners had by the rental of the property in the summer of 1951 converted it to income-producing property, the date of the conversion would have been when the property was rented and any decline in value, "while the owner is merely trying to enter into a profit-inspired transaction with the property is regarded as a part of the loss incidental to the personal use, without which the loss would not have occurred." Warren Leslie, Sr., 6 T.C. 488, 493. The record is totally devoid of any evidence tending to show the value of the property in 1951. We agree with respondent's contention that the loss on the sale of the property is not deductible. In view of the fact that petitioners filed an amended return showing an increase in their income tax liability over that shown in the original return, Decision will be entered under Rule 50.